lml

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 09-40089-JAR |
| ) | |
| TONY A. PURVIS and ) | |
| PRESTON M. GARDENHIRE, ) | |
| ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

On March 26, 2010, the Court entered an Order (Doc. 37) granting the parties' joint motion to bifurcate the motions hearing, whereby the parties would first present defendant Tony Purvis's Motion to Compel Production of Discovery (Doc. 28) pursuant to Fed. R. Crim. P. 16(a)(1)(E) and (d)(2), which co-defendant Preston Gardenhire has joined, then supplement the briefing on the pending Motion to Suppress (Doc. 30) and conduct a second hearing. On March 29, 2010, the Court held a hearing and took the motion under advisement.[1] Having reviewed the evidence and arguments presented by the parties, the Court is now prepared to rule. For the reasons explained in detail below, defendant's Motion to Compel is denied without prejudice.

**I.     Relevant Facts**

As the Court has yet to conduct the suppression hearing, the details regarding the traffic stop in this case are highly summarized. On October 4, 2009, Trooper Craig Phillips observed a

---

[1]The parties also agreed to bifurcate defendant Gardenhire's Motion for Bill of Particulars (Doc. 29) and Motion to Dismiss (Doc. 31), which defendant Purvis has not joined. At the March 29, 2010 hearing, the parties rested on their submissions and the Court will issue a separate order on these motions.

blue Ford Focus exit Interstate 70 in Wabaunsee County, Kansas, at the Tallgrass Road exit. The vehicle exited the interstate after passing signs indicating that there was a drug check lane ahead. Trooper Phillips allegedly observed the Focus fail to stop at the stop sign at the end of the exit ramp, and initiated a traffic stop. The driver was defendant Gardenhire and co-defendant Purvis was the passenger. Trooper Phillips determined that Purvis had rented the Focus and requested consent to search, which Purvis denied. Trooper Phillips then asked defendants to exit the car and informed them he intended to "work his drug dog around the car." Trooper Phillips deployed his drug detection dog, Cliff, to sniff the vehicle. Based on Cliff's alleged alert to the presence of narcotics, Trooper Phillips searched the trunk of the Focus and found approximately 105 pounds of marijuana.

Defense counsel requested training and performance records of Cliff from the government. The government provided certification and training records, but declined to provide discovery related to performance. Specifically, defendant requests the following:

(1) Field performance records kept by police regarding Cliff, for one year prior to the search of defendant's vehicle on October 4, 2009; and

(2) Copies of videos of the ten vehicle searches involving Cliff prior to the search in this case.

At the hearing, the Court heard testimony from Steven D. Nicely, an expert retained by defendant to render an opinion about the reliability of the dog-handler team, that is, Cliff and Trooper Phillips. Nicely, who testified that he had participated in the certification of hundreds of dogs and drug dog teams, reviewed Cliff's records provided by the government, the video of

Cliff's sniff of defendant's vehicle, and Trooper Phillips' report. Only Cliff's records were admitted into evidence at the hearing. These records consist of Cliff's certification, awarded by the State of Kansas Highway Patrol,[2] and four training reports from 2007 through 2009.[3]

With respect to the certification, Nicely testified that it did not tell him anything about the reliability of Cliff because it did not identify which of the many standards were used to make the assessment. Nicely testified that he could not find any published information regarding the standards used by the Kansas Highway Patrol.

Nicely also offered his opinion regarding Cliff's training records. Nicely was critical of the fact that Trooper Phillips trained Cliff, as the dog might anticipate where Phillips placed the substances because he worked with Phillips and was familiar with him. Nicely testified that by doing his own training evaluation, Trooper Phillips in effect, was evaluating himself. Nicely also noted that on a scale of 1 to 5, Cliff did not get the highest score possible on his indication, or alert to the hidden substance. Nicely testified that this indicated some type of flaw in Cliff's indication and the training record did not reflect what that flaw was. Nicely testified that the records indicate training every six weeks, which he viewed as inadequate. Accordingly, Nicely stated that he could not adequately determine Cliff's reliability based on the certification and training records provided, but needed to review the dog's field performance records, as they would indicate whether the training had "external validity," that is, carried over into the real world. In Nicely's experience, these field records are kept by officers for every deployment in the field, and ideally, should include the results of the sniff, what the dog knew before the sniff,

---

[2]Ex. 1.

[3]Exs. 2 through 5.

how the dog responded, the time of the sniff, when the dog first picked up the odor, and how the drugs were packaged. The parties stipulated that training involves a controlled environment, whereas in the field, it is not controlled.

Nicely also reviewed the video of the dog sniff. Based on his review of the video, on a scale of one to five with one being the highest score, Nicely rated Cliff at a "4" on his sniffing behavior and a "5" fo his indication behavior. Nicely testified that Cliff's records indicate that he is a passive indicator, meaning he would most likely sit when he detected the odor of narcotics. Nicely did not see Cliff sit in the video, and also testified that his sniffing was "distracted," and he appeared to receive cuing or prompting from Trooper Phillips. Nicely also expressed doubts about Trooper Phillips' interpretation of Cliff's behavior as indicating or alerting for drugs.

## II. Discussion

Defendant moves for specific information and records about Cliff beyond the training and certification records provided by the government. Citing Fed. R. Crim. P. 16(a)(1)(E), defendant argues Cliff's field records and videos are "material to preparing the defense," because without these records, Nicely cannot give an adequate opinion on Cliff's reliability and performance. The government opposes the additional requests as overly broad and not supported by the law.

Absent some additional showing of materiality, the government need not produce any further information than the certification and training records for Cliff.[4] The Tenth Circuit has

---

[4] *See United States v. Paez*, No. 09-40006-JAR, 2009 WL 1739907, at *3 (D. Kan. June 18, 2009) (citing *United States v. Lambert*, 351 F. Supp. 2d 1154, 1162 (D. Kan. 2004)); *United States v. Chavira*, No. 05-40010-01-JAR, 2005 WL 1213670, at *9 (D. Kan. May 18, 2005) (same).

explained that:

> [W]ith a canine, the reliability should come from the fact that the dog is trained and annually certified to perform a physical skill. When the annual certification process involves actual field testing and grading of the canine's drug-detection skills, the canine's reliability is sufficient for a probable cause determination absent some circumstance that justifies a more complete examination of the canine' skill and performance.[5]

Such a showing could be made if the dog has a poor accuracy record, if the dog's training was substandard, if the dog's health was in question, or if the circumstances of the search caused the Court to question the dog's reliability.[6]

In support of his motion, defendant cites Justice Souter's dissent in *Illinois v. Caballes*,[7] which discusses the wide range of accuracy of drug dog alerts, which are dependent on the dog and the handler. The majority opinion, however, did not address the issue of whether the types of additional documents requested by defendant are required to show the dog's reliability at the time he alerted on defendant's vehicle. Instead, the Court held that a dog sniff around the exterior of a lawfully stopped vehicle does not require reasonable, articulable suspicion as long as the sniff is within the scope of the stop.[8] The Court declines to depart from the clearly established rule in the Tenth Circuit based on *dicta* in a dissenting opinion.

Nor does defendant point to any facts to suggest that a deeper examination of Cliff's reliability is in order. Instead, he focuses on what Nicely characterizes as gaps and shortcomings

---

[5] *United States v. Kennedy*, 131 F.3d 1371, 1378 (10th Cir. 1997), *cert. denied*, 525 U.S. 863 (1998) (quoting *United States v. Wood*, 915 F. Supp. 1126, 1136 n.2 (D. Kan. 1996), *rev'd on other grounds*, 106 F.3d 942 (10th Cir. 1997)).

[6] *Wood*, 915 F. Supp. at 1136.

[7] 543 U.S. 405, 410-417 (2005).

[8] *Id.* at 409-10.

5

in the certification and training record. Nicely does not offer a specific reason to question the validity or reliability of Cliff's certification, only that he is not aware of what that certification entails. Likewise, Nicely's criticism of the training records are based on his review of those records, without detail or explanation from his trainer, Trooper Phillips. The details of Cliff's reliability, that is, his training and certification, are not yet before the Court, and certainly will be discussed at the suppression hearing. Moreover, Nicely's evaluation of the dog's sniff of the vehicle in this case is based on his review of the video, which has not yet been admitted into evidence, or testified to by Trooper Phillips. Although the Court granted the parties' request to bifurcate the motions hearing on efficiency grounds,[9] until these matters are established, the Court is unable to determine whether the additional records sought meet the standard of materiality for Rule 16 purposes. Accordingly, the Court concludes that defendant's request is premature, and is denied without prejudice to renew after the suppression hearing.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion to Compel (Doc. 28) is DENIED without prejudice.

**IT IS FURTHER ORDERED** that the following briefing and hearing schedule will apply to defendant Gardenhire's Motion to Suppress (Doc. 30), which defendant Purvis has joined:

Defendant Purvis's supplemental brief shall be filed on or before **June 3, 2010**;

The government's response and any *Daubert* motions shall be filed on or before **July 6, 2010;**

Defendants' reply, if any, shall be filed on or before **July 16, 2010;**

---

[9](Doc. 37.)

6

An evidentiary hearing will be held **July 20, 2010, at 9:00 a.m.**; and

Trial remains set for **August 17, 2010.**

IT IS SO ORDERED.

Dated: May 4, 2010

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE